# COMMUNITY HOUSING & RESOURCES, INC. 01/12/12
## BMRH LEASE AGREEMENT

1. **PARTIES AND DWELLING UNIT:** The parties to this Lease are Community Housing & Resources, Inc., referred to as Landlord, and, adult tenants listed below, referred to as the Tenant. The premises leased are for the exclusive use and occupancy of the Tenant and the Tenant's household consisting of the following named persons who will live in the dwelling unit. The Landlord leases to Tenant the premises located at _800 Casa Ybel #10 Sanibel, FL 33957_

| Name | Date of Birth | Social Security No. |
|---|---|---|
| _Trisha Floyd_ Head of Household, | ▬▬▬▬ | ▬▬▬▬ |
| _Christopher Floyd_ Other Adult, | ▬▬▬▬ | ▬▬▬▬ |
| ▬▬ _Floyd_ Authorized Occupant | ▬▬▬▬ | ▬▬▬▬ |
| Authorized Occupant | | |
| Authorized Occupant | | |

*Head of Household is the individual with the highest point count at time of application*

Any additions to the household members listed above require the advance written approval of the Landlord. This includes Live-in Aides and foster children or adults, but excludes natural births. The Landlord shall approve any additions to the household, if they pass the screening and an appropriate size unit is available. Deletions from the household shall be reported to the Landlord within seven (7) days.

The Below Market Rate Housing Program (BMRH) Policy Guidelines (the "Guidelines") are attached hereto and Incorporated herein by this reference. Tenant and all persons in Tenant's household acknowledges and agrees to comply with the terms and restrictions contained in the Guidelines. Any revisions to the Guidelines shall be provided in writing to the Tenant and an amendment made to the lease.

In case of an emergency the Landlord should contact & allow entrance to the following person: _Janice Hieatzman_. This person's address is _Pine Island_, phone number is _239 292-6542_, Relationship: _mom_. This person is designated by the tenant to receive all properties of the tenant in the event of personal absence from the unit.

2. **LEASE TERM:** This Lease shall begin on _March 14, 2015_. The term shall be one year and may be renewed for one additional year on the anniversary date if the annual recertification is approved, unless terminated as provided by this Lease.

3. **RENTAL PAYMENT:** Tenant shall pay monthly to CHR rent of $ _875.00_ initially, which rent is subject to adjustment as provided in the Guidelines, and sewer and trash of $ _90.00_, based on the current cost. This cost can be raised, at any time during the lease, due to uncontrollable rate increases by our vendors. A letter will be issued when the cost of utilities increases or decreases, with the change in the amount being due the 1st of the month, following the date of the letter. If this Lease begins on a day other than the first day of the month, the first month's rent/utilities shall be $ _R= 508 / U= 52_. The monthly rent & utilities are due on the first day of each month at Community Housing & Resources, Inc. office and shall remain in effect until adjusted in accordance with the provisions of this lease. Payments can be mailed to CHR, 2401 Library Way, Sanibel, FL 33957 or dropped off in CHR's night drop.

- 1 -

EXHIBIT A

Payment can be made by cash or check. Cash must be brought into the office during normal business hours. **DO NOT PUT CASH IN THE DROP BOX.**

If Tenant fails to pay the rent payment on or before the fifth day of the month, a $40.00 late charge will be charged on the sixth day and a letter will be mailed to the Tenant for payment of the rent and late charge. Eviction proceedings may begin after 10 days if payment arrangements have not been made with CHR Administration. A check returned from the bank for any reason shall be considered non-payment of rent and in addition to the late charge, if applicable; a $25.00 returned check fee will be charged. In the event legal proceedings are required to recover possession of the premises, the Tenant will be charged with the actual cost of such proceedings, including attorney's fees and costs.

4. **SECURITY DEPOSIT:** The Tenant will pay the amount of $ 600. °° ~~Paid~~ to the Landlord as a Security Deposit to secure the faithful performance by Tenant of the terms hereof. THIS SECURITY DEPOSIT MAY OR MAY NOT BE REFUNDABLE. The Landlord will hold this security deposit for the period the Tenant occupies the dwelling unit. The Landlord shall not use the security deposit for rent or other charges while the Tenant is living in the dwelling unit. If the Tenant vacated the apartment upon the expiration of the Lease, owing no rent or other amount, and provided all final utility bills are paid and receipts submitted to the Landlord, all keys are returned, and the premises and its contents are found to be in good, clean condition with no unusual damage besides ordinary wear and tear, the Landlord will refund the deposit to the Tenant within 15 days or give written notice within 30 days by certified mail to Tenant's last known mailing address of Landlord's intention to impose a claim on the deposit and the reasons for imposing the claim. Unless Tenant objects to the imposition of Landlord's claim, the Landlord, within 15 days after receipt by Tenant of Landlord's notice to impose a claim, may then deduct the amount of his or her claim and shall remit the balance of the deposit to the Tenant within 30 days after the date of the notice of intention to impose a claim for damages.

5. **COMPANION ANIMALS:** Subject to the requirements of section 4.4 of the Guidelines, if the Tenant is required to have a companion animal; one (1) companion animal may be kept on the Premises. The companion animal application must be approved before the lease is signed.

6. **OCCUPANCY:** The Tenant shall use the premises as a private dwelling for himself or herself and the persons named on this Lease. The Tenant shall not:
   a. Permit any persons other than those listed above and minor children who are born into the household during this tenancy to stay in the dwelling unit for more than a total of 30 days each year (whether consecutive or not) without obtaining the prior written approval of the Landlord.
   b. Sublet or assign the unit, or any part of the unit.
   c. Engage in or permit unlawful activities in the unit, in the common areas, or on the property grounds.
   d. Act or allow household members or guests to act in a manner that will disturb the rights of comfort and quiet enjoyment of neighbors.
   e. Permit any member of the household, a guest, or another person under the Tenants control to engage in any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents or Community Housing & Resources, Inc. employees.
   f. Permit any member of the household, a guest, or another person under the Tenants control to engage in any violent or drug-related criminal activity on or off the premises.
   g. Obtain a companion animal during the course of the Lease without prior approval from the Landlord Tenant Committee. See lease, page 2, #5.

With the prior written permission of the Landlord, the Tenant can use the premises for legally permissible income producing purposes so long as the business does not infringe on the rights of other Tenants, or violate the Lease, the Policy Guidelines, or applicable regulations, codes or covenants and restrictions.

7. **CONDITION OF DWELLING:** By signing this lease and the Unit Inspection Report, the Tenant acknowledges that the dwelling unit is safe, clean and in good condition, and that all appliances and equipment in the dwelling unit are in good working order. At the end of the Lease term, if not renewed, or upon abandonment or earlier termination, Tenant shall vacate and surrender the Premises to Landlord, cleaned, and in as good condition as they were at the beginning of the term, except for ordinary wear and tear, and Tenant shall remove all of Tenants property. All property, installations and additions owned by Tenant are required to be removed by Tenant at the expiration of the Lease, abandonment or earlier termination. All property, installations and additions owned by Tenant which remain on the premises after Tenant has vacated, shall be considered abandoned by Tenant, and shall be addressed to Paragraph 22 hereof. Tenant hereby waives any claim for damages as a result of disposal of property by Landlord. At the time of move out, the Landlord shall complete another inspection of the dwelling unit. When the Tenant notifies the Landlord of his or her intent to vacate, the Landlord shall advise the Tenant of their opportunity to participate in the move-out inspection.

8. **UTILITIES AND EQUIPMENT:** Landlord agrees to furnish a stove and refrigerator. Tenant shall pay promptly their electric bill to Lee Co. Electric & water bill to Island Water and pay to CHR the amount to cover the sewer & trash (see page 1). The Tenant is responsible for the actual cost of utilities. Residents must participate in the recycling program of the City of Sanibel.

9. **RENT RE-CERTIFICATIONS:** The amount of rent is calculated pursuant to the Policy Guidelines. Each year, by the date specified by the Landlord, Tenants shall provide updated information regarding income, assets, and family composition. The Landlord shall verify the information supplied by the Tenant through a third party and *use the verified information* to establish the amount of the Tenants rent for the next year. There will be a $50.00 annual fee to do a criminal background check at the time of re-certifications. *

10. **INTERIM RENT ADJUSTMENTS:** Tenants must report within 7 days of occurrence, to the Landlord, any of the following changes in household circumstances between Annual Re-certifications:
    a. A member has been added to the family through birth, adoption, or court awarded custody. A household member is leaving or has left the family unit.
    b. Increase or decrease in income. *
    c. Other family changes that may impact their annual income.

    Despite the provisions listed above, a Tenants rent shall not be reduced if the decrease in the family's annual income is caused by a reduction due to failure to comply with the CHR policies or as a result of fraud. In such cases, the amount of income to be attributed to the family shall include what the family would have received had they complied with the requirements or had not committed an act of fraud.

11. **EFFECTIVE DATE OF RENT CHANGE:** The Landlord shall give the Tenant written notice of any change in the Tenants rent. The notice shall be signed by the Landlord, state the new amount the Tenant is required to pay, and the effective date of the new rent amount.
    a. Rent Decreases: The Landlord shall process rent decreases, once the new income has been verified, so that the lowered rent amount becomes effective on the first day of the month after the Tenant

reports the change in household circumstances, as long as the Tenant reports the changes within the required 7 day period. This rent change may be made retroactive to the appropriate date if less than five working days has been given to the Landlord to process this change. .

b. Rent Increases: The Landlord shall process rent increases so that the adjustment will have effect the first day of the second month following the Tenants report of change in household circumstances, unless the rent increases results from a finding of intentional misrepresentation. *Note: see lease termination (17b) Rent increases will be retroactive to the date that the information should have been reported under item #9. Once the rental rate is established, it shall remain in effect until the effective date of the next annual review unless another interim review and change is warranted.

## 12. TENANTS OBLIGATION TO REPAY:
Tenants shall reimburse the Landlord for the difference between the rent that was paid and the rent that should have been charged if proper notice of income change/family composition had been given and if the following circumstances occur.

a. Tenant does not submit rent review information within 7 days of occurrence as referred to in item #9 above.

b. Tenant submits false information on application for admission to CHR housing or at subsequent annual, special, or interim review. Note: see lease termination, #17b.

## 13. MAINTENANCE:
The Tenant Agrees To:

a. Keep the dwelling unit and any other areas around the unit in a clean, safe, and sanitary condition.

b. Use all appliances, fixtures and equipment in a safe manner and only for the purposes for which they are intended.

c. Not litter the grounds or common areas of the property.

d. Not undertake, or permit his or her family or guests to undertake any hazardous acts or do anything that will damage the property.

e. Not destroy, deface, damage or remove any part of the dwelling unit, common areas, or property grounds.

f. Give the Landlord prompt notice of any defects in the plumbing, fixture, appliances, or any other part of the unit or related facilities.

g. Not park unregistered or inoperable vehicles on the property or park any vehicle in an unauthorized location.

h. Remove garbage and other waste from the dwelling unit in a clean and safe manner.

i. Pay reasonable charges for the repair of damages other than normal wear and tear to the premises, development buildings, facilities or common areas caused by the Tenant, his or her household or guests, and to do so within 30 days after the receipt of the Landlord's itemized statement of the repair charges.

The Landlord Agrees To:

a. Maintain the premises and the property in a decent and safe condition.

b. Comply with requirements of applicable building codes, and housing codes materially affecting health and safety.

c. Make necessary repairs to the premises.

d. Keep property buildings, facilities and common areas, not otherwise assigned to the Tenant for maintenance and upkeep, in a clean and safe condition.

e. Maintain in good and safe working order and condition the electrical, plumbing, heating, ventilating, air conditioning and other facilities and appliances, including elevators, supplied or required to be supplied by the Landlord.

If the dwelling unit is rendered uninhabitable regardless of cause:

a. Tenant shall immediately notify the Landlord.

b. Landlord shall be responsible for repair of the unit within a reasonable time. If the Tenant, household members or guests caused the damage, the reasonable cost of the repairs shall be charged to the Tenant.

c. Landlord shall offer standard alternative accommodations, if available, when necessary repairs cannot be made within a reasonable time.

d. Landlord shall make a provision for rent abatement in proportion to the seriousness of the damage and loss in value if repairs are not made within a reasonable time. No abatement of rent shall occur if the Tenant rejects the alternative accommodations or if the Tenant, Tenant's household, or guest caused the damage.

## 14. RESTRICTION ON ALTERATIONS: The Tenant shall not do any of the following without first obtaining the Landlord's permission in writing:

a. Dismantle, change or remove any part of the appliances, fixtures or equipment in the dwelling unit.

b. *Paint* or install wallpaper or contact paper in the dwelling unit.

c. Attach awnings or window guards on the dwelling unit.

d. Attach or place any fixtures, signs, or fences on the buildings, the common areas, or the property grounds.

e. Attach any shelves, screen doors, or other permanent improvements in the dwelling unit.

f. Install or alter carpeting, resurface floors or alter woodwork.

g. Place any aerials, antennas or other electrical connections on the dwelling unit.

h. Install additional or different locks or gates on any doors or windows or the dwelling unit.

i. Operate a business as an incidental use in the dwelling unit.

## 15. ACCESS BY LANDLORD: The Landlord or its agents, employees or representatives shall give reasonable notice (as defined in Section 83.53, Florida Statutes) to the Tenant of his or her intent to enter the dwelling unit for the purpose of performing routine inspections, to make necessary or agreed repairs, alterations or improvements, or to show the apartment to prospective new tenants. CHR staff shall have the right to enter the apartment during all reasonable hours, *without notice*, to make emergency repairs, to inspect the apartment for reported lease violation, in an emergency, or to protect any persons on the premises, and at such other times provided by law. The CHR staff shall leave a card stating the date, time and name of the person entering the unit and the purpose of the visit. The CHR staff may enter the dwelling unit at any time without advance notice when there is reasonable cause to believe an emergency exists.

## 16. SIZE OF DWELLING: The Tenant understands that the Landlord assigns dwelling units according to the Below Market Rate Housing Program Policy Guidelines. The Policy Guidelines consider the type (such as dwelling units designed for the elderly or handicapped) and size of the dwelling unit required by the number of household members. CHR may change initial assignments of BMRH units at a later date based on 2.3 of the Policy Guidelines. *The Landlord determines when a tenant must transfer to another unit based on family composition, and the Landlord shall notify the Tenant accordingly. When the Tenant is or becomes eligible for a different type or size unit and an appropriate unit under the BMRH program becomes available, the Tenant shall be given a reasonable period of time to move. This time shall not exceed thirty (30) days unless an unusual hardship condition exists. If the Tenant fails to move to the designated dwelling unit within the notice period specified by the Landlord, the Landlord may terminate this lease. Tenant acknowledges that tenant may be required to relocate during the term of this lease and may be required to sign an amendment to this lease to reflect the new premises.*

- 5 -

## 17. LEASE TERMINATION BY LANDLORD:

*The Landlord has the right to terminate the Lease if the Tenant fails to fulfill any of the Tenant Obligations under the Lease or Guidelines including, but not limited to the following:*

a. ~~Non-payment of rent to the Landlord or their utilities to Lee Co. Electric & Island Water Association or other charges due under the Lease after notice of opportunity to cure, or repeated chronic late payment of rent (four times in a twelve month period).~~

b. Furnishing false or misleading information during the application or review process; assignment or subleasing of the premises or providing accommodation for boarders or lodgers.

c. Use of the premises for purposes other than solely as a dwelling unit for the Tenant and Tenant's household as identified in this Lease, or permitting its use for any other purpose without the written permission of the Landlord.

d. Failure to use electrical, plumbing, sanitary, heating, ventilating, air conditioning and other equipment, including elevators, in a safe manner.

e. Acts of destruction, defacement or removal of any part of the premises, or failure to cause guests to refrain from such acts.

f. Failure to pay reasonable charges for the repair of damages to the premises, property buildings, facilities or common areas.

g. Any activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other Tenants or employees of CHR.

h. Any violent or drug-related activity on or off the premises.

i. Failure to allow inspection of the dwelling unit.

j. Determination that a family member has knowingly permitted an ineligible non-citizen, not listed on the lease, to permanently reside in their housing unit.

k. Determination or discovery that a resident is a registered sex offender.

l. Failure to provide timely and accurate statements of income, assets and family composition at the time of Application, Interim, or Annual Rent Re-certifications; failure to attend scheduled re-examination interviews; or failure to cooperate in the verification process.

m. The Landlord may terminate the lease with at least 30 days notice should the Tenant's circumstances change so that the Tenant is no longer eligible for the BMRH pursuant to the criteria set forth in the Policy Guidelines.

n. Tenants are required to evacuate the Island if mandatory evacuation is declared by City Council during a state of emergency.

## 18. NOTICE OF LEASE TERMINTION:  If the landlord proposes to terminate this lease, the Tenant shall be given written notice of the proposed termination, as listed below:

a. For failure to pay rent, at least ten (10) days

b. For creation or maintenance of a threat to health or safety of other Tenant's or Landlord's employees, a reasonable time based on the urgency of the situation

c. For all other cases, thirty (30) days, unless State law permits a shorter period

The Notice to Vacate required by State or local law may be combined with or run concurrently with a Notice of Lease termination required by this lease. The Notice of Lease Termination from the Landlord shall be either personally delivered to the Tenant or to an adult member of the Tenant's family residing in the unit, or sent to the Tenant by First Class Mail.

## 19. RENEWAL OR NON RENEWAL OF LEASE BY LANDLORD:

*The Landlord has the right at its discretion to renew or not renew a Tenants lease if the Tenant fails to fulfill any of the Tenants obligations under the Policy Guidelines and Lease, including, but not limited to the following:*

- 6 -

a. Failure to abide by necessary and reasonable rules made by the Landlord for the benefit and well being of the housing development and the Tenants.
b. Failure to abide by applicable building and housing codes materially affecting health or safety.
c. Failure to dispose of garbage, waste and rubbish in a safe and sanitary manner.
d. Failure to maintain unit in a manner which affects the safety of Tenant and other Tenants in the complex.
e. Any other good cause.

**20. NOTICE TO VACATE:** The Notice to Vacate required by State or local law may be combined with or run concurrently with a Notice of Lease termination required by this lease. The notice of Lease termination from the Landlord shall be either, personally delivered to the Tenant or to and adult member of the Tenant's family residing in the unit, or sent to the Tenant by First Class Mail.

**21. LEASE TERMINATION BY TENANT:** The Tenant shall give the Landlord 60-days written notice before moving from the dwelling unit. If the Tenant does not give the full notice, or violates the terms of the lease, the Tenant shall be liable for rent to the end of the notice period or to the date the dwelling unit is re-rented, whichever day comes first. In the case of Co-Tenant(s), per Guidelines 3.1, G3, if the Applicant who initially had sufficient points (Head of Household) to obtain a CHR unit abandons the unit, or in any way violates the terms of the lease without written approval from CHR, the Head of Household, along with any Co-Tenant(s) will be equally responsible for payment of rent in full for the remainder of the lease term, or until vacated unit is rented, whichever comes first.   If the Co-Tenant(s) who obtained housing without sufficient points of their own did not abandon the unit or violate the lease terms, he/she will be eligible to obtain a new lease, but only if the Applicant(s) has/have sufficient points to qualify as Head of Household.

**22. PROPERTY ABANDONMENT:** If the Tenant abandons the dwelling unit, the Landlord shall take possession of the Tenant's personal property remaining on the premises, and shall store and care for the property.  The landlord will consider the unit to be abandoned when a Tenant has fallen behind in rent and has clearly indicated by words or actions an intention not to continue living in the unit.  The Landlord has a claim against the Tenant for reasonable costs and expenses incurred in removing the property, in storing and caring for the property, and in selling the property. The Landlord can collect from the Tenant all these costs.  The Landlord may sell or otherwise dispose of the property 60 days after the Landlord receives actual notice of abandonment or 60 days after it reasonably appears to the Landlord that the Resident has abandoned the premises, whichever date occurs last.  The Landlord may use the money from the sale to pay off any debts the Tenant owes the Landlord.  Any amount above this belongs to the Tenant, if the Tenant has written and asked for it.
**BY SIGNING THIS LEASE, TENANT AGREES THAT UPON SURRENDER OR ABANDONMENT, AS DEFINED BY FLORIDA STATUTES, LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF TENANTS PERSONAL PROPERTY.**

**WAIVER OF TRIAL BY JURY:** Landlord and Tenant hereby waive trial by jury in any action, proceeding or counterclaim brought by either party against the other pertaining to any matters whatsoever arising out of or in any way connected with the Lease or Tenant's use and occupancy of the Premises, other than an action for personal injury.

**QUIET ENJOYMENT:** Landlord agrees with Tenant that upon Tenant paying the rent and performing all of terms, covenants and conditions of the Lease on Tenant's part to be performed, Tenant may peaceably, quietly enjoy the Premises.

**HOLDING OVER- DOUBLE RENT:** If Tenant holds over and continues in possession of the Premises, or any part thereof, after the expiration of the Lease, without the Landlord's permission, Landlord may recover double the amount of the rent due for each day Tenant holds over and refuses to surrender possession. Such daily rent shall be computed by dividing the rent for the last month of the Lease by fifteen.

**"AS IS":** Tenant has inspected the Premises and is familiar and satisfied with its present condition. The taking of possession of the Premises by Tenant shall be conclusive evidence that the Premises were in good and satisfactory condition at the time such possession was taken. — *had a latent defect*

**NO WAIVER OF LEASE TERMS:** The failure of Landlord to take any action against Tenant for violation of any of the terms of the Lease shall not prevent a subsequent act of Tenant of a similar nature from being a violation of the Lease.

**INTERRUPTION OF SERVICE:** Interruption or failure of any service required to be furnished to Tenant by Landlord if due to causes beyond Landlord's control or by Tenant, shall not entitle Tenant to any allowance or reduction of rent.

**NO ORAL AGREEMENTS:** The agreements contained in the Lease set forth the entire understanding of the parties, shall be binding upon the respective heirs, successors, assigns and legal representatives of the parties hereto and shall not be changed or terminated orally.

**MISCELLANEOUS:**
a) Time is of the essence of the Lease.
b) The agreements contained in the lease set forth the complete understanding of the parties and may not be changed or terminated orally.
c) All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
d) In the event any of the provision or portions of this Lease are held to be unenforceable or invalid by any court of competent jurisdiction, the validity of the remaining portions and provisions shall not be affected, and thereby held to be enforceable and valid.
e) A facsimile copy of the Lease and any signatures hereon shall be considered for all purposes originals.
f) As required by law, Landlord makes the following disclosure: "radon gas". Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.
g) Any reference herein to time periods shall be calendar days. Any time period which shall end on a legal holiday, only, shall extend to 5:00 p.m. of the next calendar day.

**Signatures:**

Tenant: 1) _____   Date: 3/14/15

Tenant: 2) _____   Date: 3/14/15

Tenant: 3) _____   Date: _____

Landlord: _____   Date: 3/14/15

- 8 -